TOWNSHIP OF MOUNT OLIVE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION, STATE AGENCY, AND COUNTY OF MORRIS, A PUBLIC BODY, AND MORRIS COUNTY TRANSFER STATION, INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 20, 1988—Decided May 16, 1988.

Before Judges FURMAN, LONG and SCALERA.

*James K. Pryor* argued the cause for the appellant (*Dorsey, Pryor & Bell,* attorneys).

*Michael S. Caro,* Deputy Attorney General, argued the cause for the respondent Department of Environmental Protection (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Joseph J. Maraziti, Jr.,* argued the cause for the respondent County of Morris (*Maraziti, Falcon & Gregory,* attorneys; *Joseph J. Maraziti, Jr.* and *Christopher Lane Downing* on the brief).

*Susan Scott* argued the cause for the respondent Morris County Transfer Station, Inc. (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Edward K. DeHope,* of counsel; *Pamela P. Warnement* and *Joyce A. Howell* on the brief).

The opinion of the court was delivered by

FURMAN, P.J.A.D.

This appeal by the Township of Mount Olive is the second before us between the same parties arising out of the disruption of Morris County solid waste disposal services threatened by the impending shutdown of the Edgeboro Landfill in Middlesex County on January 1, 1988. On the first appeal, we affirmed Department of Environmental Protection (DEP) approval on July 28, 1987 of an amendment to the Morris County District Solid Waste Management Plan, which was adopted following a public hearing. The township now appeals from DEP's issuance on October 28, 1987 of a Master Performance Permit to Morris County Transfer Station, Inc. (MCTS) to construct and operate for five years a transfer station at the site within the township approved in the district solid waste management plan amendment.

The township raises four issues before us:

I: THE FAILURE OF THE DEP TO HOLD A HEARING ON THE ISSU-ANCE OF A MASTER PERFORMANCE PERMIT, AS REQUIRED BY LAW AND AS EXPLICITLY PROMISED TO THE RESIDENTS OF MOUNT OLIVE BY THE DEP, AMOUNTS TO AN INTOLERABLE DISREGARD FOR PROPER PROCEDURE WHICH TAINTS AND INVALIDATES THE ENTIRE PROCESS FOLLOWED BY THE DEP IN THIS MATTER, AND RESULTED IN A SUCCESSFUL ATTEMPT TO LULL THE PUBLIC INTO COMPLACENCY WHILE GOING "FULL STEAM AHEAD".

II: THE MASTER PERFORMANCE PERMIT DIFFERS SO RADICALLY AND SUBSTANTIALLY FROM THE MORRIS COUNTY SOLID WASTE MANAGEMENT PLAN AMENDMENT UPON WHICH IT IS BASED, THAT NO PROPER LEGAL BASIS EXISTS FOR ISSUANCE OF A MASTER PERFORMANCE PERMIT.

III: THE DEP HAS FAILED TO ESTABLISH THAT IT HAS MET THE GROUNDS REQUIRED BY N.J.A.C. 7:26–1.10, WHICH GROUNDS ARE A PREREQUISITE TO ISSUANCE OF A MASTER PERFORMANCE PERMIT.

IV: THE MASTER PERFORMANCE PERMIT IS FUNDAMENTALLY FLAWED IN ITS TERMS AND CONDITIONS AND IN FAILING TO REQUIRE SPECIFIC OFF-SITE IMPROVEMENTS AND SPECIFIC ON-SITE ENVIRONMENTAL CONTROLS.

The focus of this appeal is on DEP's failure to hold a public hearing prior to its issuance of the Master Performance

Permit to MCTS pursuant to *N.J.A.C.* 7:26–1.10. No constitutional challenge is brought, *see In re App. of Modern Indus. Waste Service*, 153 *N.J.Super.* 232 (App.Div.1977). We reject the township's claim of a statutory right to a hearing. *N.J.A.C.* 7:26–1.10(b) does not provide for a public hearing if its four criteria are met:

1. The transfer station facility is consistent with the approved district solid waste management plan of the solid waste management district in which the facility is to be located;

2. The Commissioner has determined that development of the transfer station facility must commence forthwith in order to avert a major disruption in the provision of solid waste disposal services, which disruption would be inconsistent with the purpose and intent of the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 *et seq.*, or which would imperil public health, safety or the environment;

3. The proposed owners or operators of the facility are determined by the Commissioner, pursuant to *N.J.S.A.* 13:1E–135, after a preliminary review of such information as the Commissioner may require, to demonstrate sufficient reliability, expertise and competence to operate a transfer station facility in compliance with the statutes administered by the Department and with the conditions of the master performance permit; and

4. The facility will be designed, constructed and operated in a manner consistent with the protection of the public health, safety and the environment under the circumstances. Notwithstanding any other requirement specified in Title 7 of the New Jersey Administrative Code, the facility requirements for design, construction and operation shall be those specified as conditions in the master performance permit.

The township raises no challenge to the procedure for adoption of *N.J.A.C.* 7:26–1.10, first as an emergent new rule in June 1987 and subsequently as a regulation in August 1987. It asserts that the newly adopted regulation's failure to require a public hearing conflicts with and is invalid under *N.J.S.A.* 13:1E–5.1(d), which requires a public hearing prior to DEP approval of registration of a new solid waste facility. But the township's challenge overlooks the specific delegation of authority in *N.J.S.A.* 13:1E–4 that DEP "may exempt from the requirement of registration any class of solid waste collection or disposal facility or operation." Pursuant to that authority,

DEP promulgated *N.J.A.C.* 7:26–1.10.[1]

On this record, MCTS patently met the first two criteria of *N.J.A.C.* 7:26–1.10(b) as a transfer station facility already incorporated in the district solid waste management plan, as amended, the operation of which would contribute substantially to averting a major disruption in solid waste disposal services in Morris County. Compliance with the third criterion, that is, determination of the reliability, expertise and competence of MCTS's owners and operators, was partially met by review of MCTS's disclosure statement forms and State Police investigation. The Master Performance Permit also set a one-year limitation pending an investigative report from the Attorney General pursuant to *N.J.A.C.* 7:26–16.5; that limitation was subject to be voided if DEP determined based on the Attorney General's report "that no ground for disqualification exists."

█ The township also urges that DEP representatives gave assurances that it would have a right to a public hearing before approval for registration of the MCTS transfer station facility. Those assurances preceded the adoption of *N.J.A.C.* 7:26–1.10 and thus, if given in fact, were not misrepresentations. Nor are other elements of an estoppel against DEP present in the record in the light most favorable to the township. There is no scintilla of evidence that the township changed its position and suffered detriment as the result of representations of its right to a public hearing by DEP employees or officials. To the contrary, *e.g.*, the township pursued its first appeal raising the issue *inter alia* of the adequacy of the eleven-hour public hearing preceding approval of the amendment to the solid waste management plan; thereafter, the township submitted detailed comments by an engineering firm retained by it on environmental, health impact, traffic control and engineering design requirements for the proposed transfer station facility.

---

[1] The township is challenging *N.J.A.C.* 7:26–1.10 only under the circumstances of this appeal. Our holding is also limited to the circumstances of this appeal.

■ The township seeks vacation of the Master Performance Permit because it "differs so radically and substantially" from the district solid waste management plan as amended. The sole deviation referred to is the four-month approval of an open, rather than an enclosed, transfer station. At oral argument, we were informed that a totally enclosed facility is on schedule for commencement of operations on May 1, 1988. Meanwhile, the open facility has been a practical temporary accommodation under the exigent circumstances resulting from the Edgeboro Landfill shutdown, subject to adequate environmental and health safeguards. The open facility is a concrete slab with a minimum 11,500 square footage, fenced in; solid waste must be placed in transport trailers for removal to an out-of-state landfill within 24 hours after it is discharged there. Vacation of the Master Performance Permit because of the exigent four-month deviation is not justified.

■ The township's final argument is that the Master Performance Permit is "fundamentally flawed" because it fails "to require specific off-site improvements and specific on-site environmental controls." Implicitly, according to the township the fourth criterion of *N.J.A.C.* 7:26–1.10 was not met; design, construction and operation "consistent with the protection of the public health, safety and environment under the circumstances." That argument is urged in the context that the township should have had the opportunity in a public hearing to present objections, to discuss problems and to recommend additional safeguards. We reject it.

The conditions of the Master Performance Permit provide specifically and extensively for solid waste retention at the site for a limited time only; traffic control and mitigation; a supplemental traffic study; wastewater and stormwater collection and diversion; vermin, odor and noise control; and other environmental and health safeguards. MCTS had submitted an environmental impact statement in April 1987. The township's engineer's report was before DEP prior to its issuance of the

Master Performance Permit. Violations would be subject to DEP sanctions, *N.J.S.A.* 13:1E–9. Further, as the Deputy Attorney General appearing for DEP stated at oral argument, DEP recognizes a future obligation to weigh and, if warranted, implement proposals and recommendations of the township for off-site traffic improvements and on-site environmental controls.

We affirm DEP's issuance of a Master Performance Permit to MCTS for the Mount Olive solid waste transfer facility.